(No. 12287.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH FIONDA, Plaintiff in Error.

*Opinion filed December 18, 1918.*

1. CRIMINAL LAW—*when secondary proof of contents of letter is proper.* In a prosecution for extorting money by written threats to kill, where witnesses testify that the first letter received by the victim is in the handwriting of the accused and the victim testifies that he gave the second letter to the accused at his request and has never seen it since, it is proper to allow him to testify as to the contents of such letter.

2. SAME—*when proof of statements by accused when arrested is proper.* Proof of statements made by the accused at the time of his arrest, which are not in the nature of a confession but are corroborative of the testimony of the complaining witness and tend to show the guilt of the accused, is proper in a prosecution for extorting money by written threats to kill.

3. SAME—*what is not an improper statement by State's attorney.* In a prosecution for extorting money by written threats to kill, it is not improper for the State's attorney, in his argument to the jury, to refer to the letters as "black-hand" letters, where the complaining witness testified that such term was used by him and the accused in the transaction.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ROBERT E. CROWE, Judge, presiding.

DOUGLAS C. GREGG, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

Joseph Fionda was convicted in the criminal court of Cook county of extorting money from James Nacarota by written threats to kill. Plaintiff in error seeks a reversal on the grounds (1) that the verdict is not sustained by

the evidence; (2) that the court erred in permitting secondary proof to be made of the contents of a letter alleged to have been written by plaintiff in error and in admitting evidence of an alleged confession; and (3) that the State's attorney used highly prejudicial language in his closing argument to the jury.

The evidence on the part of the People establishes the guilt of plaintiff in error beyond question. Plaintiff in error and Nacarota were natives of the same town in Italy. Both emigrated to the United States and took up their residences in the city of Chicago. In February, 1917, plaintiff in error was the proprietor of a saloon at 717 West Taylor street, in the city of Chicago, and Nacarota was in the shoe-repairing business at 6954 Stony Island avenue. During that month Nacarota received an unsigned letter written in Italian, which translated is as follows:

"*Jim Nacarota*—At once you got to bring $500, and don't think— You understand me and the rest you can imagine. This is the last letter you get."

Nacarota testified that about the 13th of March following he received another letter in the same handwriting, which he recognized as the handwriting of plaintiff in error; that about the time he received the second letter plaintiff in error called at his store; that Nacarota was frightened, and plaintiff in error asked him what was the matter and said that he must have some trouble; that he told plaintiff in error of the two letters he had received, and plaintiff in error asked him to let him see them and he showed him the second letter; that plaintiff in error then said to him: "That is all right; I fix you up, because I know myself that is from black-hands and I fix you up; they ask you for $500; I think I can fix you up for couple hundred dollars, because you are a friend of mine;" that Nacarota told him that even if he could fix it up for $50 he could not borrow the money, and asked him where he could get the money; that he accompanied plaintiff in error

to the west side of the city and went into several saloons to find the black-hand with whom the matter was to be adjusted; that they finally found a man whom plaintiff in error represented to be a black-hand, and this man demanded the sum of $500; that plaintiff in error then stated that Nacarota was a friend of his and that he would fix him up for $200; that Nacarota told them he would borrow $50 and give it to them, and it was arranged that he would meet them on the 20th of March and give them the money; that on that date plaintiff in error came to Nacarota's store and asked him if he had the money; that he told him he only had $35, whereupon plaintiff in error asked him to go with him to Jackson park to meet the other man; that he put the money in an envelope, and when they met the other man in Jackson park he gave the money to plaintiff in error, who handed it to the other man; that they then went into a saloon and the other man gave the $35 to plaintiff in error. Nacarota further testified that on his first visit to the store he gave plaintiff in error the second letter and had never seen that letter since. The court then, over the objection of plaintiff in error, permitted Nacarota to testify to the contents of the second letter, which in substance stated: "You received the first letter. You did not come to see anybody. This is the last letter. You pay the money. If no going to pay, bad for you. You are going to be killed." Other witnesses testified that the letter offered in evidence was in the handwriting of plaintiff in error.

Capt. Alcock, then acting general superintendent of police, and Paul F. Richio, a police officer, and James Formosa, testified to a conversation had with plaintiff in error at the time of his arrest, in which plaintiff in error admitted that he had gone with Nacarota to Jackson park, where they met another man to whom Nacarota handed $35 in an envelope. Plaintiff in error denied all the transactions testified to and denied the conversation testified to by the police officers and Formosa.

The court properly permitted Nacarota to testify to the contents of the second letter which he received, as it was proven that this letter had been delivered to plaintiff in error and it was no longer within the power of Nacarota to produce it.

It was not error to permit proof of the statements made by plaintiff in error at the time of his arrest, as they were corroborative of the testimony of Nacarota. These statements were admissions tending to show the guilt of plaintiff in error and were not in the nature of a confession.

Complaint is made that Nacarota was permitted to testify that the letter offered in evidence was in the handwriting of plaintiff in error, when he testified that he had only seen him write on one occasion and then could not see what plaintiff in error had written. Nacarota was permitted, without objection, to testify that he was familiar with plaintiff in error's handwriting and that the letter was in his handwriting. Plaintiff in error in his own behalf testified that he was unable to read or write either the Italian or English language. In rebuttal Nacarota testified that on one occasion when in the saloon of plaintiff in error he saw him make an entry in an account book. Whether or not the letter was in the handwriting of plaintiff in error, his guilt has been conclusively proven.

In his closing argument to the jury the State's attorney referred to the sum of money that the "black-hand" was asking for, and he also, in discussing whether the evidence showed that plaintiff in error was able to read and write, referred to the fact that he had been employed as a claim-fixer by a railroad for seventeen years. It was proper for the State's attorney to refer to this letter as having been written by a black-hand, as Nacarota testified that that term had been used both by him and plaintiff in error in their transactions and both he and plaintiff in error treated the demand for money as emanating from a society known by that name.

The proof disclosed that plaintiff in error had been employed for many years by the Illinois Central Railroad Company in the claim department as an investigator of personal injury claims. The reference to him by the State's attorney as a claim-fixer was not prejudicial.

The judgment of the criminal court is affirmed.

                                        *Judgment affirmed.*